UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
UNITED STATES OF AMERICA,      :    CASE NO. 1:07-CR-68-1
                                              :
        Plaintiff,                         :
                                              :
vs.                                         :    OPINION & ORDER
                                              :    [Resolving Doc. No. 122]
CARL HENDERSON,                  :
                                              :
        Defendant.                      :
                                              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court decides whether to grant the Government's motion to reconsider the suppression of certain evidence as it relates to Defendant Carl Henderson ("Henderson") in this drug conspiracy and possession case. [Doc. 122.] Specifically, the Government requests that the Court reconsider its decision to suppress evidence seized by the police during their search of the home of Henderson and Tekora Madden ("Madden"), Henderson's wife and a co-defendant in this case. *Id.* In this action, Henderson's other co-defendants include Gerald Taylor ("Taylor") and Maurion Lewis ("Lewis").

In two earlier decisions and based upon Supreme Court and Sixth Circuit precedent, the Court suppressed evidence obtained by the police in their search of the home of Henderson and Madden (the "Wynde Tree Residence"). [Docs. 111, 113.] Now, the Government requests that the Court admit the Wynde Tree Residence evidence as against Henderson despite the police's illegal acts in obtaining it despite the lack of attenuation between Madden's illegal arrest and her voluntary,

Case No. 1:07-CR-68
Gwin, J.

but otherwise invalid, consent to search the Wynde Tree Residence. [Doc. 122.]

For the reasons presented below, the Court **DENIES** the Government's motion to reconsider its earlier decision to suppress evidence as to Defendant Henderson.

### I. Background

As a threshold matter, the Court incorporates herein the facts and findings of this case based on the suppression motions of Defendants Madden and Henderson. *See* Docs. 111, 113.

This Opinion and Order follows three prior rulings issued by the Court on April 13, 2007 that addressed individual suppression motions of Defendants Henderson, Madden, Taylor and Lewis. [respectively, Docs. 46, 53, 33, 37] The Court issued standalone Opinions and Orders relating to each of Madden, Doc. 111, and Henderson, Doc. 113. The Court issued a single Opinion and Order addressing the suppression motions of Taylor and Lewis. [Doc. 112.]

In its April 13, 2007 Opinion and Order addressing Defendant Madden's suppression motion, the Court determined that the police illegally arrested her following an otherwise permissible roadside stop. [Doc. 111.] The Court also considered the validity of Madden's subsequent voluntary consent to search her home. *Id.* The Court determined that the Government did not demonstrate sufficient attenuation between Madden's illegal arrest and her otherwise voluntary consent and, consequently, found her consent to the search invalid. *Id.* at 24 (citing *United States v. Lopez-Arias*, 344 F.3d 623, 629 (6th Cir. 2003)). As a result, the Court suppressed the Wynde Tree Residence evidence as to Madden. *Id.* at 24-25.

The Court then turned to the suppression motions of Defendants Taylor and Lewis. [Docs. 33, 37.] After considering their pleadings and the evidence adduced at the suppression hearing, the Court denied the motions of Taylor and Lewis and found that the police validly stopped, arrested

Case No. 1:07-CR-68
Gwin, J.

, and confiscated evidence from them and from a motel room that they shared. [Doc. 112.] The Government does not contest the Court's findings relating to Taylor and Lewis in its present motion for reconsideration. [Doc. 122.]

Finally, the Court considered Defendant Henderson's suppression motion. [Doc. 46.] As part of its analysis relative to Henderson, the Court revisited the attenuation analysis that it applied in addressing Madden's motion. *See* Doc. 113 at 8-10. Having earlier determined that the police violated Madden's Fourth Amendment rights by illegally arresting her and, further, that the Government did not demonstrate adequate attenuation between Madden's arrest and her otherwise voluntary consent to search the Wynde Tree Residence, the Court suppressed evidence from the search of the home as the impermissible product of an invalid search. *Id.* In doing so, the Court relied upon Henderson's uncontested Fourth Amendment standing in the Wynde Tree Residence. *See* Doc. 113 at 8 (citing *Rakas v. Illinois*, 439 U.S. 128, 148 (1978)). The Court did not base its reasoning as to Henderson on Madden's Fourth Amendment rights against illegal seizure. *Id.* at 8-10.

With its instant motion, the Government asks the Court to reconsider its April 13, 2007 ruling as to Henderson, i.e., Doc 113, "and find that the Fourth Amendment does not require exclusion, as to Henderson, of either the physical evidence seized from the Wynde Tree residence or Henderson's subsequent statements relating to that seizure." [Doc. 122.] The Government bases its request on its conclusion that, "[b]ecause, as a matter of law, Carl Henderson has no standing to suppress evidence based on the violation of *Madden's Fourth Amendment rights* by her purported illegal seizure," the Court should reconsider its April 13, 2007 Opinion and Order as to Henderson. *Id.* (emphasis in original). The Government says that:

-3-

Case No. 1:07-CR-68
Gwin, J.

> although the Court is correct in stating that the United States does not contest the general principal that Henderson has a privacy interest in the Wynde Tree residence, the United States *does* contest Henderson's ability to use the purported illegal detention of Madden, during which she otherwise gave voluntary consent to search the residence, to suppress the evidence related to that residence."

*Id.* (emphasis in original).

Thus, with its instant motion, the Government contests the Supreme Court's exclusionary rule and attenuation doctrine as adopted by the Sixth Circuit. *See* Doc. 122. In doing so, the Government presents two issues to the Court: (i) the legal nature and effect of Defendant Madden's otherwise voluntary consent to search the Wynde Tree Residence following her illegal arrest; and, (ii) Defendant Henderson's standing to suppress evidence stemming from the invalid search of his home. The Court discusses each issue in turn. The Court also considers the relevance of the Government's relied-upon authority, *United States v. Hopper*, 58 Fed. Appx. 619 (6th Cir. 2003), to this case.

## II. Legal Standard

Courts treat a motion for reconsideration as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e). *Smith v. Hudson*, 600 F.2d 60, 62-63 (6th Cir. 1979). Such a motion is extraordinary and sparingly granted. *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995). A court may grant such a motion upon a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered

-4-

Case No. 1:07-CR-68
Gwin, J.

during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (citation omitted).

### III. Analysis

With its motion for reconsideration, the Government says that the Court committed clear error by suppressing the Wynde Tree Residence evidence as it relates to Henderson. [Doc. 122.] The Court disagrees. The Government does not demonstrate adequate reason for the Court to reconsider its previous Order granting Henderson's motion to suppress evidence seized and statements made in relation to the police's invalid search of the Wynde Tree Residence.

To facilitate analysis of the evidentiary issues relating to Henderson, the Court first discusses its earlier finding to suppress evidence from the Wynde Tree Residence as against Madden. The Court then discusses the issue of the suppression of the Wynde Tree Residence evidence as against Henderson. Finally, the Court interprets the issues and outcome of the Government's relied-upon authority for this motion – the Sixth Circuit's unpublished opinion in *Hopper*.

**A. Suppression of the Wynde Tree Residence Evidence It Relates to Madden**

The Fourth Amendment guarantees the people's right to security in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. CONST. amend. IV. When an illegal search or seizure occurs, the exclusionary rule applies to evidence obtained during the illegal police conduct and its derivative uses. *Silverthorne Lumber Co., Inc. v. United States*, 251 U.S. 385, 392 (1920). *See also Weeks v. United States*, 232 U.S. 383, 393 (1914). The "fruit of the poisonous tree" doctrine suppresses evidence obtained through police misconduct. *Walder v. United States*, 347 U.S. 62, 64-65 (1954).

The "fruits" of a Fourth Amendment violation include tangible items actually seized or

Case No. 1:07-CR-68
Gwin, J.

observed in an illegal search, words overheard during the course of unlawful activity, or confessions or statements made during an illegal arrest or detention. *United States v. Crews*, 445 U.S. 463, 470 (1980). "[S]tatements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will." *Florida v. Royer*, 460 U.S. 491, 501 (1983). S*ee also Kaupp v. Texas*, 538 U.S. 626, 633 (2003) (reconfirming suppression of evidence obtained during a period of illegal seizure unless the statement was an act of free will sufficient to purge the primary taint of the unlawful seizure).

In *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963), the Supreme Court held that the "taint" on such evidence does not arise from the illegal conduct. Instead, a court suppresses such evidence after inquiring "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488 (citation omitted). If evidence results from "exploited illegality," a court must suppress it; evidence "attenuated" from the taint may be allowed. *Id.*

In *Brown v. Illinois*, 422 U.S. 590, 601-02 (1975), the Supreme Court held that attenuation requires the application of two independent tests: (i) the "voluntariness" of the consent under the totality of the circumstances; and, (ii) the continued presence of a "causal connection" between the illegality and the evidence. *See also Taylor v. Alabama*, 457 U.S. 687, 690 (1982); *Dunaway v. New York*, 442 U.S. 200, 219 (1979). The voluntariness test requires that consent qualify as voluntary under the Fifth Amendment, i.e., not result from coercion. *Dunaway*, 442 U.S. at 219; *Brown*, 422 U.S. at 601-02. In contrast, the causal connection test, also referred to as the Fourth Amendment

-6-

Case No. 1:07-CR-68
Gwin, J.

"fruits test," looks to three factors to determine whether illegal taint has dissipated: (i) temporal proximity between the illegality and the consent; (ii) the presence of intervening circumstances; and, (iii) the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. at 603-04. Courts must apply both the voluntariness and causal connection tests when determining the admissibility of tainted evidence. *Id.*

Thus, a suspect's voluntary consent represents only a threshold requirement, *Dunaway*, 442 U.S. at 219, which the government demonstrates by showing that the consent results from "an essentially free and unconstrained choice by its maker," *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). If the police obtain a defendant's consent without coercion arising "either from the nature of the police questioning or the environment in which it took place," then a court will find the consent voluntary. *Id.* at 247. This represents the totality of the constitutional requirement for a legally-obtained consent. *Id.* However, when preceded by illegality, consent may be voluntary, but still causally connected to prior illegal conduct that renders the otherwise voluntary consent invalid. *See* 3 WAYNE R. LEFAVE, SEARCH AND SEIZURE § 8.2(d) (4th ed. 1996). A court must then apply *Brown*'s causal connection test to achieve the purposes of the Fourth Amendment, namely, the deterrence of the government's use of evidence derived from an illegal search or seizure. *Dunaway*, 442 U.S. at 218 (noting, for example, that "[w]hen there is a close causal connection between the illegal seizure and [a] confession, not only is the exclusion of the evidence more likely to deter similar police misconduct in the future, but use of the evidence is more likely to compromise the integrity of the courts").

The issue before a court considering the validity of a consent to search following an illegal arrest is whether the consent sufficiently satisfies both the voluntariness and causal connection tests.

Case No. 1:07-CR-68
Gwin, J.

This issue splits the circuits. The Sixth Circuit requires that a consent to search following an illegal seizure pass both the voluntariness and causal connection tests before a court may find it valid. *See, e.g.*, *United States v. Lopez-Arias*, 344 F.3d 623, 629-30 (6th Cir. 2003); *United States v. Caicedo*, 85 F.3d 1184, 1190 (6th Cir. 1996); *United States v. Bradley*, 922 F.2d 1290, 1296 (6th Cir. 1991); *United States v. Richardson*, 949 F.2d 851, 859 (6th Cir. 1991); *United States v. Buchanan*, 904 F.2d 349, 356 (6th Cir. 1990). As noted in one of the circuit's leading cases:

> Therefore, following Supreme Court precedent, we have repeatedly held that if a consent to search is given after an illegal seizure, evidence obtained pursuant to the consent to search must be suppressed, unless the consent is sufficiently attenuated from the illegal seizure such that the consent is the product of an intervening act of free will.

*Lopez-Arias*, 344 F.3d at 629 (citations omitted).

In assessing causal connection, the Sixth Circuit follows *Brown* and requires a court to apply attenuation factors to an otherwise voluntary consent following an illegal arrest. These factors include "the length of time between the illegal seizure and the consent, the presence of intervening circumstances, the purpose and flagrancy of the official misconduct, and whether the officers read the suspect his *Miranda* rights before he consented." *Lopez-Arias*, 344 F.3d at 630. No single factor is dispositive. *Brown*, 422 U.S. at 603-04. The government bears the burden of persuasion to establish attenuation. *Kaupp v. Texas*, 538 U.S. 626, 633 (2003).

Applying this law to the present facts, the Court first notes that, in its memorandum supporting its motion for reconsideration, the Government exclusively focuses its argument on establishing the voluntariness of Madden's post-arrest consent to search the Wynde Tree Residence. *See* Doc. 122. The Government's failure to address any causal connection between Madden's illegal arrest and her voluntary consent negates the Government's conclusion that Madden "validly

Case No. 1:07-CR-68
Gwin, J.

consented" to the search of the Wynde Tree Residence. Consequently, as a matter of law, the Government's contention that Madden's voluntary consent validated the police's search of the Wynde Tree Residence fails.

By failing to address the Sixth Circuit's causal connection test, the Government cannot demonstrate clear error of law. Further, by misapplying the law, the Government fails the facts. As the Court discussed in its April 13, 2007 Opinion and Order regarding Madden, *see* Doc. 111, the police illegally seized Madden at the January 11, 2007 roadside stop. Without probable cause, Captain Heffernan put Madden in the back seat of his police car and then, upon orders of Special Agent Lucas and with Detective Clark, transported her to the parking lot of the Fourth District Station and, ultimately, to an interrogation room at the Justice Center. *Id.* Lucas testified that, throughout Madden's stay in Heffernan's police car and the interrogation room, she "was not free to go." *Id.* No event intervened between her illegal seizure and her eventual consent to search. *See, e.g.*, *Buchanan*, 904 F.2d at 356 (noting that "[d]issipation of the taint resulting from an illegal entry ordinarily involves showing that there was some significant intervening time, space, or event") (internal quotation and citation omitted)). The police did not allow Madden to use a phone; she did not contact a lawyer. *Id.* Without an intervening event, the "taint" of Madden's illegal arrest did not dissipate before the police obtained her otherwise voluntary consent to search the Wynde Tree Residence.

Furthermore, as detailed in the April 13, 2007 Opinion and Order, the illegality of Madden's arrest was blatant. [Doc. 111.] Upon orders from Special Agent Lucas, Captain Heffernan and Detective Clark kept Madden in the back of Heffernan's police car for nearly four hours. *See Richardson*, 949 F.2d at 859 (finding that placing a suspect into the back of a police car for twenty

Case No. 1:07-CR-68
Gwin, J.

minutes without probable cause constituted a blatant constitutional violation). The undercover officers testified that Madden "was not free to go" from the time of the roadside stop. Special Agent Lucas testified: "I told [Heffernan], I'm on this other surveillance [of Lewis and Taylor], do what you have to do; find out, investigate, do what you can do; find out what's going on . . ." *See* Trial Tr. at 21 (Mar. 16, 2007). Lucas eventually read Madden her *Miranda* rights. However, this alone does not suffice to break the causal chain between Madden's illegal arrest and her consent to search the Wynde Tree Residence. *See Kaupp*, 538 U.S. at 633.

*Brown*'s requirements are not met. As a result, Madden's "consent was tainted by the illegality and was ineffective to justify the search." *Royer*, 460 U.S. at 507-08. Madden's consent, although voluntary, was invalid. On this basis, the Court suppressed the Wynde Tree Residence evidence as against Madden pursuant to the requirements of the exclusionary rule as formulated by the Supreme Court and adopted by the Sixth Circuit.

**B. Suppression of the Wynde Tree Residence Evidence as It Relates to Henderson**

Having established Madden's consent to the search of the Wynde Tree Residence as voluntary, but invalid, the Court next asks why Madden's invalid consent – "ineffective to justify the search" of the house – should waive Henderson's Fourth Amendment rights with regard to the couple's home. It should not.

At the outset, the Court notes that the Government confuses Henderson's Fourth Amendment standing in the Wynde Tree Residence with "standing to suppress evidence based on the violation of *Madden's Fourth Amendment rights* by her purported illegal seizure." *See* Doc. 122 (emphasis in original). Thus, to clarify Henderson's constitutional rights, the Court briefly discusses the concept of standing within the context of the Fourth Amendment.

Case No. 1:07-CR-68
Gwin, J.

"The guaranty of the Fourth Amendment . . . against unreasonable search and seizure is a personal right or privilege, that can only be availed of by the owner or claimant of the property subjected to unreasonable search and seizure." *Graham v. United States*, 15 F.2d 740, 742 (8th Cir. 1926), *cert. denied sub nom. O'Fallon v. United States*, 274 U.S. 743 (1927). In effect, this requires the demonstration of a definite interest – usually proprietary – in either the premises searched or the property seized, or both.

This "standing" requirement looks to the Fourth Amendment as the ultimate test of "interest." The Fourth Amendment's protection extends to "persons, houses, papers, and effects . . ." U.S. CONST. amend. IV. Thus, an unconstitutional search invades at least one of these protected possessions. Courts have long interpreted "houses" to mean "dwellings." *See, e.g.*, *Nunes v. United States*, 23 F.2d 905 (1st Cir. 1928). Where the movant can show lawful occupancy of the illegally searched premises as a dwelling and ownership of the articles seized therefrom, little doubt remains as to his standing to suppress the evidence.

Without personally suffering a violation of his own Fourth Amendment rights, an individual may not vicariously assert the Fourth Amendment rights of another. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citations omitted). As the Supreme Court explains:

> A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Alderman* [*v. United States*, 394 U.S. 165, 174 (1969)]. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, *United States v. Calandra*, 414 U.S. 338, 347 (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections. *See Simmons v. United States*[, 390 U.S. 377, 389 (1968)].

*Rakas*, 439 U.S. at 134.

Under normal circumstances, a wife may waive her husband's right to consent to a police

Case No. 1:07-CR-68
Gwin, J.

search of the couple's home. *See, e.g.*, *Georgia v. Randolph*, 547 U.S. 103 (2006). However, as discussed above, valid consent following an illegal seizure must pass two tests: first, the defendant must voluntarily provide it; second, the consent cannot result from the illegal seizure. *See, e.g.*, *Lopez-Arias*, 344 F.3d at 629 (citing, *inter alia*, *Dunaway*, 442 U.S. at 217-19; *Brown*, 422 U.S. at 602-04).

This holds true not only for the initial arrestee, but for others who share a Fourth Amendment property interest in the premises searched following illegal actions by the police. *See, e.g.*, *United States v. Santa*, 236 F.3d 662, 667, 676-78 (11th Cir. 2000) (suppressing heroin evidence found in couple's home as against wife because of husband's invalid, tainted consent); *United States v. Oaxaca*, 233 F.3d 1154, 1158 (9th Cir. 2000) (noting that "[c]onsent [to search] by a defendant or a third party is tainted where the evidence indicates that it stemmed from the prior illegal Government action" and reversing conviction stemming obtained from that tainted consent); *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000) (reversing a conviction where the defendant had standing to challenge the stop of a vehicle and the consent to search given by co-passengers, "was [not] sufficiently attenuated to dissipate the taint caused by the" illegal stop); *United States v. Howard*, 828 F.2d 552, 556 (9th Cir. 1987) (remanding defendant-husband's suppression motion after finding wife's consent to search tainted); *United States v. Vasquez*, 638 F.2d 507, 527-30 (2d Cir. 1980) (remanding defendant-wife's motion to suppress evidence of drug conspiracy because of husband's invalid, tainted consent to enter couple's home).

The Sixth Circuit's *Lopez-Arias* cites to an Eleventh Circuit case that applies this "second-party" tainted-consent rule. 344 F.3d at 629 (citing *Santa*, 236 F.3d at 676). In *Santa*, the defendant-wife filed a motion to suppress heroin seized during the search of the apartment she

-12-

Case No. 1:07-CR-68
Gwin, J.

shared with her husband. *Santa*, 236 F.3d at 667. The defendant-wife said that the police unlawfully entered the couple's home based upon the invalid consent of her co-defendant-husband. *Id.* In response, the government contended, *inter alia*, that, even if the entry was illegal, the co-defendant-husband's subsequent verbal and written consent to the search was voluntary and, therefore, valid. *Id.* The district court denied the wife's motion to suppress and she appealed. *Id.* at 668.

On appeal, the Eleventh Circuit found that, because the husband's consent to search the couple's apartment "was tainted by his unlawful arrest, it was insufficient to legitimate the search of his residence." *Id.* at 678. Thus, the Eleventh Circuit reversed the district court's denial of wife-Santa's motion to suppress the evidence seized from the apartment as against her. *Id.* Her husband's invalid consent did not qualify as "one of the specifically established exceptions to the requirements of both a warrant and probable cause." *Id.* at 676 (quoting *Schneckloth*, 412 U.S. at 219).

So with Madden-Henderson. As discussed above, the Government did not establish the validity of Madden's consent to search the Wynde Tree Residence. Consequently, Madden's otherwise voluntary consent to the search of the Wynde Tree Residence resulted in the police's invalid search of the couple's home. This invalid search violated Henderson's Fourth Amendment rights. The law recognizes this wrongdoing: the invalid consent of one party to a premises can impede another inhabitant's constitutional rights. *See, e.g.*, *Santa*, 236 F.3d at 667, 676-78. Henderson has standing in the Wynde Tree Residence such that the police cannot invalidly search the home without violating his Fourth Amendment rights. For this reason, the Court suppressed the Wynde Tree Residence evidence as against Henderson.

Case No. 1:07-CR-68
Gwin, J.

### C. Precedential Value of *Hopper* to the Instant Case

Finally, the Government incorrectly analogizes *United States v. Hopper*, 58 Fed. Appx. 619 (6th Cir. 2003), to this case. While *Hopper* turns on facts vaguely similar to those presented here, the case presents a divergent procedural history and judicial outcome from Madden-Henderson. As a result, *Hopper* does not persuade the Court. Further, although the Government advances *Hopper* as precedential authority, the Court notes that, as an unpublished opinion, *Hopper* provides limited support to the Government's present request.

In *Hopper*, the trial court considered wife-Hopper's claim of illegal arrest and rejected it. 58 Fed. Appx. at 622, 624-25. On appeal, husband-Hopper attempted to resurrect his wife's earlier constitutional claim to shield himself from incriminating evidence. *Id.* at 621. The Sixth Circuit, including Chief Judge Boggs, refused husband-Hopper's attempt "because [he] has no standing to challenge the police's stop of Mrs. Hopper, and because the sweep of his home was conducted with Mrs. Hopper's voluntary consent . . . ." *Id.* at 625. Thus, in *Hopper*, the appellant requested reversal of second party factual issues already decided on the merits by the trial court. The appellate court did not find clear error in the district court's rulings and, accordingly, declined to reverse.

This case presents facts inopposite to those of *Hopper*. In its previous rulings, the Court separately considered the constitutional contentions of wife-Madden and husband-Henderson. *See* Docs. 111, 113. In her motion to suppress, Madden complained, among other things, that the police violated her Fourth Amendment rights by illegally arresting her without probable cause at the January 11, 2007 roadside stop. [Doc. 53.] The Court agreed and entered its suppression order relating to Madden's claim. [Doc. 111.] Thus, unlike the trial court in *Hopper*, the Court has suppressed any evidence seized as the result of wife-Madden's illegal arrest, including evidence

-14-

Case No. 1:07-CR-68
Gwin, J.

seized from the Wynde Tree Residence. Separately, the Court considered Henderson's personal constitutional claims raised in his motion to suppress, Doc. 46, and granted, in part, and denied, in part, his requested relief, Doc. 113. Contrary to the Government's instant contention, the Court did not conflate the couple's constitutional rights.

Further, and, again, unlike in *Hopper*, the Madden suppression directly affects the outcome of Henderson's wholly-separate motion. This results not because, as the Government contends, "Henderson has standing in Madden's Fourth Amendment rights," but because he has a separate Fourth Amendment privacy interest in the police's impermissible search of the Wynde Tree Residence. As highlighted in the Court's April 13, 2007 Opinion and Order relating to Henderson's suppression motion, "[t]he government cannot violate the Fourth Amendment . . . and use the fruits of such unlawful conduct to secure a conviction. Nor can the Government make indirect use of such evidence for its case, or support a conviction on evidence obtained through leads from the unlawfully obtained evidence." *See* Doc. 113 (quoting *Walder v. United States*, 347 U.S. 62, 64-65 (1954)).

Finally, unlike husband-Hopper's thwarted attempts, Henderson does not try to shield himself by leveraging Madden's constitutional rights. Henderson brought claims personal to himself, which the Court considered and upon which it ruled. Hopper lost because he tried to "suppress evidence based on the purportedly illegal seizure of his wife, a third party. Fourth Amendment rights are personal rights that, like some other constitutional rights, may not be vicariously asserted." *Hopper*, 58 Fed. Appx. at 624 (citation omitted). Here, the law blocks the use of evidence related to the police's impermissible search of the Wynde Tree Residence as against Henderson because, to allow it, would violate his separate, Fourth Amendment privacy rights in the

Case No. 1:07-CR-68
Gwin, J.

Wynde Tree Residence.[1]

Thus, Henderson does not present a claim "virtually identical to the one" considered in *Hopper*. *See* Doc. 122. The Court distinguishes the facts, legal analysis, and procedural outcome of Madden-Henderson from *Hopper*. Doing so, the Court declines to reconsider the admission of evidence obtained as the result of the invalid search of the Wynde Tree Residence.

### IV. Conclusion

For these reasons, the Court **DENIES** the Government's motion to reconsider its earlier decision to suppress evidence as to Defendant Henderson.

IT IS SO ORDERED.


Dated: April 25, 2007         s/ *James S. Gwin*
                              JAMES S. GWIN
                              UNITED STATES DISTRICT JUDGE

---

[1] Here, the Court notes the opinion of the Sixth Circuit:

> Although there is always a temptation in cases of this nature . . . to let the ends justify the means, it must be remembered that the courts only see cases in which the conduct of the officer resulted in contraband being found. If the officer had [not acted], obviously we would not even know that [the underlying illegality] had ever occurred. Therefore, we must accept that courts will always be "thwarting" what some may view as a good piece of police work when a motion to suppress is granted in cases of this nature. Notwithstanding the importance of drug interdiction, however, we are still charged with the responsibility of seeing that the interdiction occurs without the Constitution being violated.

*United States v. Mesa*, 62 F.3d 159, 163 (6th Cir. 1995) (footnote omitted).