```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                              :
UNITED STATES OF AMERICA,                     :       CASE NO. 1:07-CR-68
                                              :
                Plaintiff,                    :
                                              :
vs.                                           :       OPINION & ORDER
                                              :       [Resolving Doc. No. 164]
CARL HENDERSON,                               :
                                              :
                Defendant.                    :
                                              :
------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court decides whether to grant Defendant Carl Henderson's ("Henderson") motions for judgment of acquittal or, in the alternative, a new trial. [Doc. 164.] These motions follow Henderson's May 3, 2007 jury conviction of conspiracy to possess and to distribute phencyclidine ("PCP") and felony possession of ammunition. [Docs. 59, 158.] With these motions, Henderson challenges only his conspiracy conviction. [Doc. 164.]

On May 3, 2007, a jury found Henderson guilty of conspiring to possess and to distribute PCP with co-defendants Gerald Taylor ("Taylor") and Maurion Lewis ("Lewis"). [Doc. 158.] On May 1, 2007, a separate jury had convicted Taylor and Lewis of conspiracy to possess and to distribute PCP, as well as possession of PCP, under the same superceding indictment that the Government brought against Henderson. [Docs. 155, 156.] The Government's conspiracy charges arose from an undercover drug investigation that revealed PCP-related activity between Henderson, Taylor, and Lewis on January 11, 2007 and involved, *inter alia*, drugs found in the room occupied by Taylor and Lewis at the Extended Stay America Motel in Brooklyn, Ohio ("Room 106" and

Case No. 1:07-CR-68
Gwin, J.

"Extended Stay," respectively). On that day, the undercover officers observed Henderson, Taylor, and Lewis at the Extended Stay and, upon executing a valid search warrant, discovered PCP in Room 106. [Docs. 155, 156.] The May 1, 2007 Taylor and Lewis jury convicted the defendants of conspiracy to possess and distribute and possession of PCP. *Id.* Henderson's May 3, 2007 jury convicted him of conspiracy to distribute PCP and acquitted him of PCP possession. [Doc. 158.]

On May 10, 2007, Henderson moved the Court for a judgment of acquittal or, in the alternative, for a new trial. [Doc. 164.] On May 15, 2007, the Government opposed Henderson's motions. [Doc. 165.] On May 18, 2007, Henderson replied. [Doc. 167.]

For the reasons presented below, the Court **DENIES** Henderson's Rule 29(c) motion for acquittal and his Rule 33 motion for a new trial.

## I. Background

This Court's previously-filed opinions lay out this case's facts and procedural history; the Court refers the reader to those opinions for background. *See* Docs. 111, 112, 113, 133, 139.

## II. Legal Standard

Rule 29(c) of the Federal Rules of Criminal Procedure provides that "[i]f the jury returns a verdict of guilty . . . , a motion for judgment of acquittal may be made . . . within 7 days after the jury is discharged . . . If a verdict of guilty is returned the court may on such motion set aside the verdict and enter a judgment of acquittal." FED. R. CRIM. P. 29(c). A court may grant such a motion only where "the evidence is insufficient to sustain a conviction" of one or more of the offenses charged in the indictment." Id. at 29(a). In reviewing the claims for sufficiency of the evidence to support a conviction, a court must review the record in the light most favorable to the prosecution and grant relief only if it finds that no rational trier of fact could have found proof of guilt beyond

Case No. 1:07-CR-68
Gwin, J.

a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001).

In making a Rule 29 determination, a court does not weigh the credibility of the Government's witnesses, *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998), because jurors are "well equipped to analyze the evidence" and accept or reject the believability of factual offerings in witness testimony, *Griffin v. United States*, 502 U.S. 46, 59 (1991) (citation omitted). A jury's guilty verdict will stand where the prosecution offered sufficient evidence to support any alternative factual theories upon which the guilty verdict may have rested. *Id.* The reviewing court need not address each of these theories. *Id.*

Rule 33 of the Federal Rules of Criminal Procedure states that "the court may grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). A defendant may ground a Rule 33 motion on newly-discovered evidence or misconduct by the prosecutor or the court. *See, e.g.*, *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999). The trial court has broad discretion to grant a Rule 33 motion. *See, e.g.*, *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988). A court should "exercise such discretion only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Id.*

### III. Analysis

Henderson challenges his conviction on grounds ranging from insufficiency of evidence to evidentiary errors. The Court considers each claim in turn.

*A. Henderson's Rule 29(c) Motion for Judgment of Acquittal*

In his Rule 29(c) motion for judgment of acquittal, Henderson says that "[t]he evidence is insufficient to support findings of guilt beyond a reasonable doubt on any of the offenses for which

-3-

Case No. 1:07-CR-68
Gwin, J.

the Defendant was convicted." [Doc. 164.] Henderson does not detail the purported insufficiency or present exculpatory evidence to advance his contention that the Government failed to prove his involvement in the PCP conspiracy as a matter of fact. *Id.*

The jury, not the Court, appropriately weighs matters of fact at trial. Thus, with Henderson's instant Rule 29(c) motion, the Court only considers the sufficiency of the evidence adduced at the May 3, 2007 trial.

Viewing the evidence against Henderson in the light most favorable to the Government and assuming its truth, *Jackson*, 443 U.S. at 319, the Court finds that sufficient evidence existed for the jury to find Henderson guilty of conspiring to possess and distribute PCP with Taylor and Lewis on January 11, 2007. The Government presented sufficient testimonial and physical evidence to show that Defendant Henderson was with Taylor and Lewis at the Extended Stay on January 11, 2007 and that the group engaged in a conspiracy to possess and to distribute PCP.

Briefly, the Government presented the jury with the following evidence. Before January 11, 2007, an undercover investigation team amassed credible information from several confidential informants that identified Henderson as a PCP dealer. The confidential informants told the police that Henderson sourced his PCP from California. Against this backdrop, the police surveilled Henderson, learned that he frequented the Extended Stay, and asked Extended Stay managers to alert the officers if Henderson came to the motel. In early January 2007, Henderson, Taylor, and Lewis – all Nutty Bloc Crips, a Los Angeles-based gang whose members deal drugs – traveled from California to Cleveland. On January 11, 2007, Extended Stay employees observed Henderson at the motel. The undercover team surveilled the motel and observed Henderson, Taylor, and Lewis at the Extended Stay.

Case No. 1:07-CR-68
Gwin, J.

In the early afternoon of January 11, 2007, Tekora Madden, Henderson's wife, picked him up at the Extended Stay in an area of the parking lot immediately near Room 106. Undercover officers followed Madden and Henderson and the police stopped their vehicle to arrest Henderson on an outstanding Cuyahoga County warrant. During the roadside stop, the police discovered approximately $17,000 in cash in the Madden-Henderson vehicle.

Separately and simultaneously, another undercover team followed a van driven by Taylor and Lewis and owned by Henderson; Henderson apparently had lent this van to Taylor and Lewis for their use. After being stopped, Taylor and Lewis initially attempted to conceal their accommodations at the Extended Stay, but later admitted that they shared a room at the motel. During their arrest of Lewis, the police confiscated a key for Room 106 at the Extended Stay. Upon a valid search of Room 106, the authorities discovered PCP.

During a post-arrest interview with Special Agent Lucas, Henderson admitted that he had met with Taylor and Lewis at the Extended Stay on January 11, 2007, that he lent his van to Taylor and Lewis, and that the three belonged to the Nutty Bloc Crips. The Government also gave evidence that telephone calls were made between the cell phones found in the Madden-Henderson vehicle and cell phones found in the Taylor-Lewis van.

The Court assumes the truth of the evidence offered by the Government against Defendant Henderson. *Jackson*, 443 U.S. at 319; *Abdullah*, 162 F.3d at 903. At trial, the Government established connections between Henderson, Taylor, and Lewis in California and in Cleveland. The Government produced the PCP found in Room 106, i.e., the motel room shared by Taylor and Lewis. The Government provided evidence that approximately $17,000 was found in Henderson's vehicle. The Government presented Henderson's admissions that he knew Taylor and Lewis, met with them

Case No. 1:07-CR-68
Gwin, J.

on January 11, 2007, and loaned them his van. On these bases, the Court finds that the Government presented evidence sufficient to support the jury's finding of guilt beyond a reasonable doubt that Henderson conspired to possess and distribute PCP.

Henderson does not give the Court reason to overcome the assumption that his May 3, 2007 jury was "well equipped to analyze the evidence" against him and determine his participation in the PCP conspiracy. *Griffin*, 502 U.S. at 59. As a result, Henderson does not establish insufficiency in the evidence against him that could overturn his May 3, 2007 conviction. FED. R. CRIM. P. 29(a). Accordingly, the Court denies Henderson's Rule 29(c) motion for judgment of acquittal.

*B. Henderson's Rule 33 Motion for a New Trial*

As an alternative to his Rule 29(c) motion for judgment of acquittal, Henderson moves the Court to grant a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. [Doc. 164.] Henderson does not support his motion for a new trial on "newly discovered evidence" or "prosecutorial misconduct;" instead, Henderson asserts that the Court made several incorrect rulings that prejudiced the outcome of his case. [Docs. 164, 167.] Specifically, Henderson claims that the Court impermissibly allowed: (i) his admissions to Special Agent Lucas regarding his involvement on January 11, 2007 with Defendants Taylor and Lewis; (ii) reference to and testimony establishing his affiliation with the Nutty Bloc Crips; and, (iii) the post-arrest statements of Taylor and Lewis as co-conspirator non-hearsay. *Id.*

After considering these arguments, the Court rejects them.

First, Henderson says that the Court erred by allowing testimony regarding his admission to Special Agent Lucas that he met with Taylor and Lewis on January 11, 2007 at the Extended Stay. [Docs. 164, 167.] Henderson contends that the Court earlier suppressed "the entirety of [his] written

-6-

Case No. 1:07-CR-68
Gwin, J.

statement" to Special Agent Lucas. *Id.* Because the Court earlier suppressed his statement, Henderson says the Government impermissibly referenced it at trial. *Id.*

Not true.

In its earlier rulings regarding the co-defendants' pre-trial motions, the Court suppressed evidence against Henderson arising from the police's unconstitutional detention of Madden. This evidence included Henderson's statements regarding Madden and evidence seized from the Wynde Tree Residence. The Court did not suppress evidence of the connection between Henderson, Taylor, and Lewis or evidence regarding Room 106. Thus, contrary to Henderson's current assertion, the entirety of his statement to Lucas does not qualify as "fruit of the poisonous tree," because it separately arose from the tainted evidence resulting from Madden's illegal arrest.

Specifically, Henderson voluntarily made his admissions regarding Taylor and Lewis during his lawful detention under a valid Cuyahoga County arrest warrant. Likewise, the discovery of PCP in the motel room of Taylor and Lewis resulted from the execution of a valid search warrant. Nothing that Henderson admitted about Taylor and Lewis, nor anything found in Room 106, qualifies as "fruit of the poisonous tree."

Henderson's current argument wholly ignores the fact that the two undercover investigations on January 11, 2007 involved different evidence and various relationships that he maintained with his co-defendants. Henderson's Madden-related evidence included items impermissibly found at the Wynde Tree Residence and the alleged involvement of his wife in the purported PCP-ring. Upon pre-trial motion, the Court suppressed this evidence. *See* Docs. 111, 113, 133, 139. Henderson's Taylor- and Lewis-related evidence included the PCP discovered in Room 106, his relationship with his co-defendants, and his presence at the Extended Stay on January 11, 2007. The Court did not

-7-

Case No. 1:07-CR-68
Gwin, J.

suppress this evidence upon pre-trial motion. *See* Docs. 112, 113, 133, 139.

Accordingly, at Henderson's May 3, 2007 trial, the Court did not allow the Government to present any Madden-related evidence and permitted presentation of Taylor- and Lewis-related evidence. At trial, the Government's witnesses testified to their first-hand knowledge of Henderson's activities on January 11, 2007, information provided to them by reliable confidential informants, and Henderson's own admissions relating to Taylor, Lewis, and the Extended Stay. Despite Henderson's current contention, this evidence did not result from the "exploitation of the illegal seizure of his home." [Doc. 164.] Instead, it arose during Henderson's valid arrest and the police's valid search of Room 106. Thus, the Court finds no legal error with the admission of evidence adduced at Henderson's May 3, 2007 trial as it relates to Henderson, Taylor, and Lewis.

Second, Henderson argues that the Court should grant him a new trial because of allegedly prejudicial errors of law, particularly the Government's reference to Henderson's affiliation with the Nutty Bloc Crips in its opening statement, the admission testimony as to his affiliation with the gang, and the testimony of Los Angeles County Sheriff Duncan that California authorities monitored Henderson, Taylor, and Lewis under suspicion of illegal activity in August 2006. [Docs. 164, 167.] Henderson says that reference to his involvement with the Nutty Bloc Crips created "egregious[ ] prejudice" and, as a result, forms the basis for the Court to grant a new trial. *Id.*

Again, the Court disagrees.

As a threshold matter, the Court granted defense counsel's sidebar motion regarding the Government's characterization of Henderson as a gang member during the prosecution's opening statement. The Court also notes that, at trial, defense counsel did not seek a limiting instruction to the jury on the Government's reference to the Nutty Bloc Crips. Thus, Henderson's instant

-8-

Case No. 1:07-CR-68
Gwin, J.

complaint about the prosecution's gang-related comments during the Government's opening statement at trial does not compel the Court to grant his Rule 33 motion.

Further, pursuant to Federal Rules of Evidence 401 and 403, the fact of Henderson's gang affiliation and the testimony of Los Angeles County Sheriff Duncan represent relevant evidence substantially more probative to Henderson's conspiracy charges than prejudicial to his case. This case involved a purported Northeast Ohio PCP conspiracy between admitted members of a California street gang. Henderson's gang affiliation represented a substantially probative fact because it could establish the likelihood of a criminal plan between Henderson, Taylor, and Lewis, all of whom have connections to the Nutty Bloc Crips, a Los Angeles street gang known to deal drugs. Similarly, Sheriff Duncan provided relevant and substantially probative testimony that authorities previously had detained the three co-defendants under suspicion of criminal activity. The January 11, 2007 association between Henderson, Taylor, and Lewis at the Extended Stay became a substantially probative fact for the jury to weigh the Government's conspiracy charges against Henderson. Thus, the Court properly allowed the jury to consider Henderson's gang affiliation and his August 2006 California investigation to determine Henderson's involvement in this case's charged PCP conspiracy.

Finally, Henderson says that the Court committed an error of law by admitting into evidence the post-arrest statements of Taylor and Lewis as co-conspirator non-hearsay. [Docs. 164, 167.] Henderson questions "how the statements supposedly made by Taylor and Lewis, in which they admitted to being Nutty Bloc Crips, and to knowing the Defendant [Henderson], were not only made in furtherance of the charged conspiracy, but could actually be used (as it [sic] was [sic]) to prove the charge of conspiracy itself." [Doc. 164.] On this basis, Henderson says Rule 33 compels a new

-9-

Case No. 1:07-CR-68
Gwin, J.

trial. *Id.*

Under Federal Rule of Evidence 801(d)(2)(E), the Court properly admitted the post-arrest statements of Taylor and Lewis as co-conspirator non-hearsay. At trial, the Government advanced the theory that Taylor and Lewis lied about their accommodations at the Extended Stay in an attempt to conceal evidence of the on-going PCP conspiracy. Statements designed to conceal an on-going conspiracy are made in furtherance of the conspiracy for purposes of Rule 801(d)(2)(E). *See, e.g.*, *United States v. Franklin*, 415 F.3d 537, 552 (6th Cir. 2005). At the time of this attempted concealment, Taylor and Lewis did not know of Henderson's arrest and, because the police had not yet located the PCP, the conspiracy continued until authorities searched Room 106. Accordingly, the Court properly admitted the post-arrest statements of Taylor and Lewis.

Thus, none of Henderson's claims demonstrate an "extraordinary circumstance where the evidence preponderates heavily against the verdict." *Ashworth*, 836 F.2d 266. As a result, the "interest of justice" does not require that the Court grant a new trial and, consequently, the Court will not do so.

### IV. Conclusion

For these reasons, the Court **DENIES** Henderson's Rule 29(c) and Rule 33 motions.

IT IS SO ORDERED.

Dated: June 4, 2007                              s/      *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE